IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAH WARD,

             Plaintiff,

    v.

LVNV FUNDING, LLC and JOHNSON MARK, LLC,

             Defendants.

Case No.: 3:23-cv-00362-AN

OPINION AND ORDER

Plaintiff Sarah Ward brings an unfair or unconscionable debt collection claim under the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.* against defendants Johnson Mark, LLC ("JM") and LVNV Funding, LLC ("LVNV") (collectively, "defendants"). Defendant JM filed this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a), alleging lack of subject-matter jurisdiction. Defendant LVNV joined JM's Motion for Summary Judgment. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons set forth below, JM's motion is GRANTED.

## LEGAL STANDARD

When a jurisdictional motion "involv[es] factual issues which also go to the merits," a court should employ the standard applicable to a motion for summary judgment because "resolution of [those] jurisdiction facts is akin to a decision on the merits." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In that posture, the moving party "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The substantive law determines which facts are material.  *Id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Under this standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  *Id.* at 325.  Instead, the moving party need only prove there is an absence of evidence to support the non-moving party's case.  *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial.  *Celotex*, 477 U.S. at 324.

## BACKGROUND

Defendants JM and LVNV are debt collectors as the term is defined by the FDCPA.  JM was hired by LVNV to collect a debt owed by plaintiff.  JM hired GPS Servers LLC ("GPS Servers") to file and serve a Summons and Complaint against plaintiff.  On January 9, 2023, GPS Servers filed the Complaint in the Circuit Court of Polk County and obtained the case number.  Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF [23], Ex.1, at ¶ 2.  GPS Servers successfully served plaintiff by certified mail on March 10, 2023.  Plaintiff alleges she received the certified mail on or around March 13, 2023.  Compl., ECF [1], ¶ 16.  The Summons and Complaint received by plaintiff did not have a case number.  *Id.* ¶ 6.

On March 14, 2023, plaintiff filed the Complaint in this case, alleging defendants "used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt when they mailed the Plaintiff UNFILED circuit court summons and complaint without the case number." *Id.* ¶¶ 13-14.  Evidenced by plaintiff's Complaint, plaintiff was able to retain an attorney and find the omitted

case number between receiving the Summons and Complaint on March 13, 2023, and filing this lawsuit on March 14, 2023. *See Id.* ¶ 8 ("There can be no doubt that the UNFILED summons and complaint mailed…was the same lawsuit as 23CV01216"). Plaintiff alleges damages in the form of emotional distress, fear, sleeplessness, anxiety, and pecuniary loss. *Id.* ¶ 9. On March 21, 2023, GPS Servers provided follow-up mailing to plaintiff, with a version of the Summons and Complaint that included the case number.

## DISCUSSION

The Court may not decide the merits of this case unless it has subject-matter jurisdiction, which requires the plaintiff to have Article III standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95 (1998). To establish Article III standing, a plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff does not necessarily meet the concrete injury requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016) (*Spokeo I*). In other words, for Article III purposes, it is not enough for a plaintiff to allege that a defendant has violated a right created by a statute; the plaintiff must have suffered a concrete injury-in-fact due to the violation. *Patel v. Facebook*, 932 F.3d 1264, 1270 (9th Cir.2019).

The Ninth Circuit adopted a two-step approach to determine whether the violation of a statute causes a concrete injury. *Id.* at 1271. "First, a court must determine '(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Id.* (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (*Spokeo II*)).

1.    *Concrete Interests*

The Ninth Circuit's first step requires the Court "[t]o identify the interests protected by the FDCA" by examining the "'[h]istorical practice' and the 'legislative judgment' underlying the provisions at issue." *Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 546 (9th Cir. 2020) (quoting *Campbell*

*v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020)).  If the harm protected by the FDCPA bears a "close relationship" to harms that have been "traditionally regarded as providing a basis for a lawsuit," plaintiff has sufficiently alleged a concrete injury.  *See Campbell*, 951 F.3d at 1118 (finding the Electronic Communications Privacy Act codified as a substantive right to privacy because there are several actionable privacy torts at common law); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021) (finding certain class members sufficiently alleged a concrete injury in fact because dissemination of inaccurate information to third parties under the Fair Credit Reporting Act was sufficiently similar to the tort for defamation).

The closest common-law analog to plaintiff's claim is fraud.  *Adams*, 836 F. App'x at 546.  At common law, actions for fraud require proof of reliance and resulting pecuniary loss.  *Id.* (citing *Restatement (Second) of Torts* §§ 525, 537, 550-552 (Am. L. Inst. 1977)).

Plaintiff's claim, however, is not analogous to fraud.  Plaintiff claims that "[d]efendants purposely omitted the information to harass, intimidate, and cause fear in [plaintiff]."  Compl. ¶ 14.  However, plaintiff has not offered evidence of reliance.  Rather, plaintiff makes bare allegations of "emotional distress, fear, sleeplessness, anxiety, and pecuniary loss."  Compl. ¶ 9.  These bare allegations are not sufficient.  Plaintiff must show detrimental reliance and pecuniary loss.  *See Bahar Sengel & Cengiz Sengel v. Concord Servicing Corp.*, No. 5:21-CV-01454-CJC, 2022 U.S. Dist. LEXIS 79544, at *8 (C.D. Cal. Jan. 26, 2022) (declining to find Article III standing based on allegations of "emotional distress" and "feeling harassed" where the plaintiffs failed to explain how they detrimentally relied on the debt collection letter at issue).

Next, the Court must determine whether the FDCPA "provisions at issue were established to protect the plaintiff's concrete interests."  *Patel*, 932 F.3d at 1270-71.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); *see Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d

1162, 1171 (9th Cir. 2006) (quoting S. Rep. N. 95-382, at 1 (1977)) ("Legislative history indicates that Congress enacted the FDCPA to protect consumers from 'improper conduct' and illegitimate collection practices 'without imposing unnecessary restrictions on ethical debt collectors.'").  "[C]ongressional judgment suggests a concern with 'genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response' to a debt collector's communication." *Adams*, 836 F. App'x at 546 (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)).  After all, debt collectors who use statements that are not genuinely misleading would not be competitively advantaged compared to those who refrain from doing so.  "Statements that induce no reliance do not impede a consumer's ability to intelligently respond to a debt collector." *Id.*

   The FDCPA is clearly concerned with preventing debt collection practices that confuse the least sophisticated debtor and frustrate the debtor's ability to intelligently respond to a debt collector's communication.  However, here, the absence of a case number on the initial Summons and Complaint is unlikely to confuse even the least sophisticated debtor.  Outside of the case number, the Summons and Complaint properly notified plaintiff that a lawsuit had been filed against her and that she had thirty (30) days to make an appearance.  Indeed, plaintiff did not rely on the missing case number to assume that no lawsuit had been filed, or even allege that it prevented plaintiff from responding in a meaningful way.  Rather, plaintiff, without the case number, was able to retain an attorney and file this FDCPA lawsuit, demonstrating her ability to understand JM's communications and properly respond.  Although the FDCPA protects against an individual's concrete interest in being free from abusive debt collection practices, the omission of a case number—a seemingly *unintentional* omission—does not fall under the kinds of abusive practices Congress sought to protect against when passing the FDCPA.

   2. *Actual Harm*

   At step two, courts consider "whether the specific procedural violations alleged in this case actually harm or present a material risk of harm to "interests protected by the relevant provisions of the FDCPA." *Spokeo II*, 867 F.3d at 1113.

   Plaintiff cannot establish actual harm.  Plaintiff claims that the failure to include a case

number infringes on plaintiff's due process right "to defend against the debt collection lawsuit and avoid[] a default judgment." Pl.'s Resp. to Mot. for Summ. J. ("Pl.'s Resp."), ECF [27], at 9. However, plaintiff fails to offer, or even address, evidence of emotional distress that occurred as a result of the omitted case number.[1] Further, plaintiff fails to offer evidence of pecuniary loss. The facts here are clear: plaintiff was served with the Summons and Complaint on March 13, 2023, and less than twenty-four hours and before receiving the follow-up copies of the Summons and Complaint, she identified the correct case number and retained an attorney to file this lawsuit. There is no evidence of emotional distress or pecuniary loss that plaintiff could possibly have suffered in the hours or days before her lawsuit was filed.

The cases relied on by plaintiff offer no support. First, in *Pena v. Experian Information Solutions*, the plaintiff alleged that the defendant published consumer reports to third parties containing false U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") hit information about the plaintiff and that he suffered harm because the defendant falsely associated him with a criminal on the list and deprived the plaintiff of the information necessary to discover and rectify the defendant's harmful error. No. 8:22-cv-01222-SSS, 2022 WL 14049542, at *2 (C.D. Cal. Oct. 24, 2022). The court found those allegations sufficient to allege a concrete harm. *Id.*

The court distinguished *TransUnion LLC v. Ramirez. Id.* In *TransUnion*, the plaintiffs alleged the defendant violated the FCRA because it sent the plaintiffs copies of their credit files that omitted the plaintiffs' potential match on the OFAC list, and only included the OFAC information in a second separate mailing. *TransUnion*, 141 S. Ct. at 2213. The plaintiffs in *TransUnion* argued they had standing because "the [defendant's] mailings were formatted incorrectly and deprived them of their right to receive

---

[1] Neither the Supreme Court nor the Ninth Circuit have announced a standard applicable to emotional distress damages under the FDCPA. *See Russell v. GC Servs. Ltd. P'ship*, 476 F.Supp.3d 1097, 1103 (E.D. Wash. Aug. 4, 2020) (citing *Hartung v. J.D. Byrider, Inc.*, No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *6 (E.D. Cal. June 26, 2009) ("[H]ow to interpret the 'actual damage' language [of the FDCPA] with respect to emotional distress is a controversial issue that has not yet been addressed by the Ninth Circuit."). However, the Ninth Circuit "has generally stated that emotional distress damages can be awarded without corroborative evidence where circumstances make it obvious that a reasonable person would suffer significant emotional harm," rather than merely trivial or transient harm. *Hartung*, 2009 WL 1876690 (citing *In re Dawson*, 390 F.3d 1139, 1150 (9th Cir. 2004) *abrogated on other grounds* by *In re Gugliuzza*, 852 F.3d 884 (9th Cir. 2017)). Here, however, plaintiff has identified no evidence showing that the omitted case number would cause a reasonable person to suffer significant emotional harm.

information in the format required by the statute." *Id.* However, the *TransUnion* court found that the plaintiffs did not have standing because they did not demonstrate that the improper format caused the type of harm traditionally recognized as providing a basis for a lawsuit. *Id.* As an example, the court noted that the plaintiffs did not provide evidence "that [they] would have tried to correct their files—and thereby prevented dissemination of a misleading report—had they been sent the information in the proper format." Thus, the plaintiffs' assertions regarding improper format were found to be "bare procedural violation[s], divorced from any concrete harm" and did not suffice to establish standing. *Id.*

The *Pena* court, however, noted that, unlike *TransUnion*, the plaintiff alleged that his inaccurate credit report was sent to third parties and that he would have tried to correct his consumer file if his disclosure had been accurately provided to him. *Pena*, 2022 WL 14049542, at *2. Further, the plaintiff alleged that he was deprived of the information necessary to rectify any errors. *Id.* Additionally, the court determined, again unlike *TransUnion*, where the plaintiffs failed to identify "downstream consequences" from failing to receive the required information, the plaintiff in *Pena* alleged exactly the type of downstream consequence—that the defendant's omission of the OFAC information deprived the plaintiff of the opportunity to rectify the defendant's error by disputing that information so that the defendant could properly investigate and then correct the error. *Id.* at *3.

Second, in *Guarnieri v. Be Money*, the court found that the plaintiff suffered a "concrete injury" under only one of his two theories under the Electronic Funds Transfer Act ("EFTA"). The EFTA "covers a range of electronic money transfers" and subjects them to procedural requirements designed to protect consumers from transactions made in error or without their consent. *Guarnieri*, No. 22-cv-00907-EMC, 2022 WL 11381916, at *8 (C.D. Cal. Oct. 18, 2022). The plaintiff alleged that the defendant did not follow the procedural requirements of the EFTA, which required the defendant to provisionally credit the plaintiff after the ten-day investigatory period expired, and the defendant failed to properly provide plaintiff with notice of the results of its investigations. *Id.* The court found only plaintiff's first theory, the defendant's failure to provide provisional credit, sufficient to allege a concrete injury. *Id.* However, the second theory, the failure to provide notice, was found to be "'a bare procedural violation, divorced from

any concrete harm.'" *Id.* (quoting *Spokeo II*, 578 U.S. at 342). The court noted that the plaintiff only alleged the failure to provide notice, not that an "unauthorized" transfer or inadequate investigation occurred." *Id*. at *8. Thus, the plaintiff insufficiently alleged independent harm via the defendant's failure to notify him of the results of its investigation, and the defendant's alleged failure to do so is "an asserted informational injury that cause[d] no adverse effects" and therefore "cannot satisfy Article III." *Id.* (citing *TransUnion,* 141 S. Ct. at 2214 (citation and internal quotation marks omitted)).

Here, however, plaintiff has not and cannot identify "downstream consequences." Rather, plaintiff references procedural requirements under Washington State Law to illustrate the material risk of improper service, which may include a risk to meaningfully engage in one's own defense or the risk of default judgments. *See* Pl.'s Resp. 8. However, plaintiff must show that this risk materialized and affected her personally. *See TransUnion*, 141 S. Ct. at 2211 (finding that while a reckless driver exposed a motorist "to a risk of future harm," the "risk does not materialize" if the motorist makes it home safely). The fact here is that default *was not entered* against plaintiff, and plaintiff *was not at risk* of being defaulted against. Plaintiff's actions—finding the case number, retaining an attorney, and filing this lawsuit—demonstrate that plaintiff was aware of JM's attempt to serve and commence a lawsuit against plaintiff, and had the ability to meaningfully engage in her defense. Therefore, plaintiff cannot show actual harm. Accordingly, plaintiff does not have standing[2], and summary judgment is GRANTED.

## CONCLUSION

Accordingly, defendant JM's Motion for Summary Judgment, ECF [23], is GRANTED. All claims against defendants JM and LVNV are DISMISSED without prejudice for lack of

---

[2] Because plaintiff lacks standing, the Court will not address JM's direct liability arguments.

jurisdiction. *See Hampton v. Pac. Inv. Mgmt. Co.*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction … must be without prejudice.").

IT IS SO ORDERED.

DATED this 1st day of November 2023.

Adrienne Nelson
United States District Judge